NADINE M. MORTON, ESQ.
Nevada Bar No. 8583
**MORTON LAW, PLLC**
11700 West Charleston Boulevard
Suite 170-65
Las Vegas, NV 89135
(702) 710-3333 Telephone
(702) 435-9828 Facsimile
nadine@mortonlawnv.com

*Attorney for Plaintiffs*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

PATRICIA FITZPATRICK and ROBERT
L. ANSARA, as Special Co-Administrators
and Special Representatives of the Estate
of JEREMIAH BOWLING, deceased; and
PATRICIA FITZPATRICK, as Heir and
Mother of JEREMIAH BOWLING,
deceased,

    Plaintiffs,

   v.

LAS VEGAS METROPOLITAN POLICE
DEPARTMENT, a political subdivision of
the State of Nevada; ANGELO LARRY,
Corrections Officer, individually and in his
official capacity; ROLANDO TREVINO,
Corrections Officer, individually and in his
official capacity; DOES 1 through 10,
individually and/or in their official
capacities; DOE CLASSIFICATION
OFFICERS 1 through 10, individually
and/or in their official capacities; DOE
CORRECTIONS OFFICERS 1 through 10,
individually and/or in their official
capacities; ROE CORPORATIONS 1
through 10, Foreign and/or Domestic
Corporations; NAPHCARE, INC., an
Alabama corporation qualified to do
business in the State of Nevada; DOE
HEALTH CARE PROVIDERS 1 through
10, individually,

    Defendants.

Case No.: 2:17-cv-1886

**STIPULATION AND [PROPOSED]
ORDER TO FILE SECOND
AMENDED COMPLAINT**

MORTON LAW, PLLC
11700 West Charleston Blvd., Suite 170-65
Las Vegas, NV 89135
702.710.3333 Telephone 702.435.9828 Facsimile

MORTON
LAW FIRM

MORTON LAW, PLLC
11700 West Charleston Blvd., Suite 170-65
Las Vegas, NV 89135
702.710.3333 Telephone 702.435.9828 Facsimile

COME NOW PLAINTIFFS PATRICIA FITZPATRICK AND ROBERT L. ANSARA, as Special Co-Administrators and Special Representatives of the Estate of Jeremiah Bowling, deceased; and Patricia Fitzpatrick, as heir and mother of Jeremiah Bowling, deceased, by and through their attorney, NADINE M. MORTON, ESQ., and Defendants LAS VEGAS METROPOLITAN POLICE DEPARTMENT, ANGELO LARRY, AND ROLANDO TREVINO, CORRECTIONS OFFICER, by and through their attorney, ROBERT W. FREEMAN, JR., Esq., and agree and stipulate that Plaintiffs be granted leave to file their Second Amended Complaint, naming NAPHCARE, INC. as a Defendant in this matter.

Through discovery in this matter, Plaintiffs have concluded that NAPHCARE, INC. is an appropriate and essential party to this matter, and, in the interests of judicial economy, seek to add NAPHCARE, INC. as a Defendant herein rather than bringing a separate action against it. The proposed Second Amended Complaint is attached hereto as Exhibit 1.

DATED this __21st__ day of February, 2018.    DATED this __21st__ day of February, 2018.

MORTON LAW, PLLC                          LEWIS BRISBOIS BISGAARD & SMITH


_/s/ Nadine M. Morton_____       _/s/ Robert W. Freeman, Jr._____
Nadine M. Morton, Esq.                    Robert W. Freeman, Jr., Esq.
Nevada Bar No. 8583                       Nevada Bar No. 3062
11700 West Charleston Boulevard           6385 South Rainbow Boulevard
Suite 170-65                              Suite 600
Las Vegas, Nevada 89135                   Las Vegas, NV 89118
*Attorney for Plaintiffs*                 *Attorneys for Defendants*


## ORDER

Based upon the foregoing Stipulation among the parties named herein, and good cause appearing, IT IS SO ORDERED.

**IT IS FURTHER ORDERED** that plaintiffs shall forthwith separately file the Second Amended Complaint which is attached as Exhibit 1 to the stipulation.

UNITED STATES DISTRICT JUDGE or MAGISTRATE JUDGE
Dated: February 23, 2018

EXHIBIT 1

MORTON
LAW FIRM

1 | NADINE M. MORTON, ESQ.
Nevada Bar No. 8583
2 | **MORTON LAW, PLLC**
3 | 11700 West Charleston Boulevard
Suite 170-65
4 | Las Vegas, NV 89135
(702) 710-3333 Telephone
5 | (702) 435-9828 Facsimile
6 | nadine@mortonlawnv.com

7 | *Attorney for Plaintiffs*

8 | UNITED STATES DISTRICT COURT

9 | DISTRICT OF NEVADA

10

11 | PATRICIA FITZPATRICK and ROBERT    )   Case No.:  2:17-cv-1886
L. ANSARA, as Special Co-Administrators )
12 | and Special Representatives of the Estate )
of JEREMIAH BOWLING, deceased; and )   **SECOND AMENDED COMPLAINT**
13 | PATRICIA FITZPATRICK, as Heir and )
Mother of JEREMIAH BOWLING, )   **[Jury Demand]**
14 | deceased, )
)
15 | )
)
16 | Plaintiffs, )
)
17 | v. )
)
18 | LAS VEGAS METROPOLITAN POLICE )
DEPARTMENT, a political subdivision of )
19 | the State of Nevada; ANGELO LARRY, )
Corrections Officer, individually and in his )
20 | official capacity; ROLANDO TREVINO, )
Corrections Officer, individually and in his )
21 | official capacity; DOES 1 through 10, )
individually and/or in their official )
22 | capacities; DOE CLASSIFICATION )
OFFICERS 1 through 10, individually )
23 | and/or in their official capacities; DOE )
CORRECTIONS OFFICERS 1 through 10, )
24 | individually and/or in their official )
capacities; ROE CORPORATIONS 1 )
25 | through 10, Foreign and/or Domestic )
Corporations; NAPHCARE, INC., an )
26 | Alabama corporation qualified to do )
business in the State of Nevada; DOE )
27 | HEALTH CARE PROVIDERS 1 through )
10, individually, )
28 | )
Defendants.

MORTON LAW, PLLC
11700 West Charleston Blvd., Suite 170-65
Las Vegas, NV 89135
702.710.3333 Telephone 702.435.9828 Facsimile

PATRICIA FITZPATRICK and ROBERT L. ANSARA, as Special Co-Administrators and Special Representatives of the Estate of JEREMIAH BOWLING, and PATRICIA FITZPATRICK, as Heir and Mother of JEREMIAH BOWLING (hereinafter "Plaintiffs"), by and through their counsel of record, NADINE M. MORTON, ESQ. of MORTON LAW, PLLC, set forth their Second Amended Complaint as follows:

## I.
## PARTIES

1.      At all times relevant hereto, JEREMIAH BOWLING was a resident of Clark County, Nevada.

2.      Plaintiffs PATRICIA FITZPATRICK and ROBERT L. ANSARA bring this suit in their capacity as Special Co-Administrators for the Estate of JEREMIAH BOWLING.

3.      PATRICIA FITZPATRICK brings this action as the Heir and Mother of JEREMIAH BOWLING.

4.      Plaintiff PATRICIA FITZPATRICK is the JEREMIAH BOWLING's mother.

5.      Plaintiff PATRICIA FITZPATRICK is, and at all times herein mentioned was, a resident of the State of Kentucky.

6.      Plaintiff PATRICIA FITZPATRICK was appointed as Co-Special Administrator of the Estate of JEREMIAH BOWLING and Personal Representative of JEREMIAH BOWLING by the Eighth Judicial District Court of the State of Nevada, in and for the County of Clark, on May 12, 2017, Case Number P-17-091479-E.

7.      ROBERT L. ANSARA is a private administrator and was appointed as Co-Special Administrator of the Estate of JEREMIAH BOWLING and Personal Representative of JEREMIAH BOWLING by the Eighth Judicial District Court of the State of Nevada, in and for the County of Clark, on May 12, 2017, Case Number P-17-091479-E.

8.    At all times relevant hereto, Defendant LAS VEGAS METROPOLITAN POLICE DEPARTMENT ("LVMPD") was and is a political subdivision of the State of Nevada, and was and is a person as defined in *Monell v. Department of Social Services*, 436. U.S. 658 (1978).

9.    At all times relevant hereto, Defendant LVMPD was and is responsible for the hiring, control and supervision of all of CCDC detention and police officers and agents, as well as the implementation and maintenance of official and unofficial policies, procedures, practices, customs and/or usage pertaining to the day-to-day functioning of CCDC.

10.    At all times relevant hereto, Defendant NAPHCARE, INC. was and is an Alabama corporation, duly authorized to do business in, and doing business in, Clark County, Nevada.

11.    At all times relevant hereto, Defendants DOE HEALTH CARE PROVIDERS 1 through 10, and each of them, were employees, agents, and/or contractors of Defendant NAPHCARE, INC., and were, individually and/or collectively, responsible for conducting and/or documenting the medical and/or psychological evaluation, classification, diagnosis, care, and/or treatment of inmates at CCDC, including but not limited to Franklin Sharp and JEREMIAH BOWLING.

12.    At all times relevant hereto, Defendants NAPHCARE, INC. and/or DOE HEALTH CARE PROVIDERS 1 through 10, and each of them, performed all actions and/or omissions herein alleged pursuant to a contract with Defendant LVMPD and/or the City of Las Vegas.

//

//

13.    At all times relevant hereto, Defendant NAPHCARE, INC. and/or DOE HEALTH CARE PROVIDERS 1 through 10, and each of them, were responsible for conducting and/or documenting the medical and/or psychological evaluation, classification, diagnosis, care, and/or treatment of inmates at CCDC, including but not limited to Franklin Sharp and JEREMIAH BOWLING.

14.    At all times relevant hereto, Defendant NAPHCARE, INC. and/or DOE HEALTH CARE PROVIDERS 1 through 10, and each of them, were responsible for recommending to Defendant LVMPD personnel, based on Defendant NAPHCARE, INC.'s medical and/or psychological evaluation, classification, diagnosis, care, and/or treatment, appropriate classification, housing, care, protection, and treatment of inmates at CCDC, including but not limited to Franklin Sharp and JEREMIAH BOWLING.

15.    At all times relevant hereto, Defendants DOES 1 through 10, and each of them, were employees, agents, contractors, and/or representatives of CCDC responsible for creating and implementing policies, procedures, practices, customs and/or usage for inmate classification, cell assignment, protection of inmates from violence by other inmates, and equal and appropriate treatment of vulnerable inmates.

16.    At all times relevant hereto, Defendants ANGELO LARRY, ROLANDO TREVINO, and DOE CORRECTIONS OFFICERS 1 through 10, and each of them, were Corrections Officers employed by Defendant LVMPD, and were responsible for the health and safety of decedent JEREMIAH BOWLING at the time of his death, including monitoring his safety and obtaining appropriate medical treatment for him.

17.     At all times relevant hereto DOE CLASSIFICATION OFFICERS 1 through 10, and each of them, followed prescribed policies, procedures, practices, customs and/or usage to classify inmates and/or to assign those inmates to cells or other housing within CCDC.

## II.
## JURISDICTION

18.     Jurisdiction and venue are proper in the District of Nevada because the events giving rise to this action took place in Las Vegas, Nevada.

19.     Jurisdiction and venue in United States District Court for the District of Nevada arises because the action addresses a Federal Question, pursuant to 42 United States Code Section 1983 and the Fourteenth Amendment to the United States Constitution.  In addition, this Court has supplemental jurisdiction over the state-law claims pursuant to 28 United States Code Section 1367.

## III.
## ALLEGATIONS COMMON TO ALL COUNTS

20.     This action arises from the homicide of JEREMIAH BOWLING while he was in the custody of LVMPD as a pre-trial detainee, incarcerated as a nonviolent offender at the Clark County Detention Center ("CCDC"), located at 330 South Casino Center Boulevard, Las Vegas, Nevada 89101.

21.     JEREMIAH BOWLING was last known to be alive and unharmed at approximately 4:16 p.m.  on October 8, 2016, when inmates Franklin Sharp and JEREMIAH BOWLING were locked down in their shared cell, Male Close Custody Unit Cell #21, located in the 3B module on the third floor of North Tower of CCDC.

22.     Neither Franklin Sharp nor JEREMIAH BOWLING could exit the cell through the cell door or through the windows because the cell door was locked and the windows could not be opened.

23.     On October 8, 2016, Franklin Sharp killed JEREMIAH BOWLING by strangling him with a bed sheet and/or other ligature and by striking JEREMIAH BOWLING about the head and body and slamming JEREMIAH BOWLING's head against the cell floor and walls.

24.     Franklin Sharp and JEREMIAH BOWLING were the only two persons in Cell #21 at the time of the homicide.

25.     The cell door was locked at the time of the homicide, and entry into the room could be made only by unlocking the door.

26.     At approximately 5:30 p.m. on October 8, 2016, CORRECTIONS OFFICER ANGELO LARRY began the process of visually checking all 46 cells in the module, beginning with Cell #1 on the first floor.

27.     When CORRECTIONS OFFICER ANGELO LARRY arrived at Cell #21, he looked through the window in the locked cell door and saw Franklin Sharp at the wash basin.

28.     Franklin Sharp was washing his hands, and his hair was wet and appeared to CORRECTIONS OFFICER ANGELO LARRY to have soap in it.

29.     CORRECTIONS OFFICER ANGELO LARRY could not see JEREMIAH BOWLING in the cell, so he instructed Franklin Sharp to back up.

30.     Franklin Sharp complied and walked to the opposite side of the cell from the door and sat down on the bottom bunk.

31.     CORRECTIONS OFFICER ANGELO LARRY looked down through the cell door window and saw JEREMIAH BOWLING lying on the floor near the door.

MORTON LAW, PLLC
11700 West Charleston Blvd., Suite 170-65
Las Vegas, NV 89135
702.710.3333 Telephone 702.435.9828 Facsimile

32.    CORRECTIONS OFFICER ANGELO LARRY called for medical assistance.

33.    CORRECTIONS OFFICER ROLANDO TREVINO responded from a neighboring module.

34.    CORRECTIONS OFFICER ROLANDO TREVINO entered the cell and saw JEREMIAH BOWLING lying face-down in a pool of blood, unresponsive.

35.    CORRECTIONS OFFICER ROLANDO TREVINO summoned additional assistance over the radio, put on gloves, and pulled JEREMIAH BOWLING out of the cell and into the dayroom.

36.    At approximately 5:58 p.m. on October 8, 2016, emergency medical personnel arrived and transported JEREMIAH BOWLING to University Medical Center ("UMC").

37.    At 6:12 p.m. on October 8, 2016, UMC physician Paul Chestovich, M.D. pronounced JEREMIAH BOWLING deceased.

38.    JEREMIAH BOWLING had facial trauma and a three- to four-millimeter ligature mark around his neck.

39.    Blood spatter around the pool of blood on the cell floor indicated that JEREMIAH BOWLING's head was slammed down multiple times into the pool of blood.

40.    CORRECTIONS OFFICER ANGELO LARRY moved Franklin Sharp away from the cell and asked him what had occurred.

41.    Franklin Sharp replied, "He [JEREMIAH BOWLING] would not let me look out the window."

42.    Franklin Sharp had dried blood spatter on the lower portions of both of his legs.

43.    Franklin Sharp otherwise refused to speak with Corrections Officers regarding the incident.

44.     At the time he was celled with JEREMIAH BOWLING, Franklin Sharp was a violent offender with ten (10) felony offenses, twenty-seven (27) misdemeanor convictions, and eighteen (18) failures to appear, had been in custody of law enforcement on at least twenty-six (26) different occasions, and was in custody in Case C-16-316351-1, charged with Robbery With Use Of A Deadly Weapon and Assault With A Deadly Weapon and Case 16F14684X, charged with Battery By Prisoner, Attempt Murder, and Battery By Strangulation.

45.     Franklin Sharp was deemed a high-risk level by Nevada Pretrial Risk Assessment.

46.     The Information in District Court Case Number C-16-316351-1 states that Franklin Sharp stood up in front of a named victim, pulled out a white-handled knife, and began to pull it back as if Franklin Sharp was going to stab the victim.

47.     The Information in District Court Case Number C-16-316351-1 states that the victim pleaded with Franklin Sharp not to stab him.  Franklin Sharp then grabbed the victim's cell phone, threw it on the ground, and told the victim to "beg for your life."

48.     The Information in District Court Case Number C-16-316351-1 states that Franklin Sharp was captured shortly after this incident, and a small hatchet knife was located on his person.

49.     Franklin Sharp's jury trial on these charges was scheduled for December 5, 2016.

50.     On September 4, 2016, while awaiting his jury trial, Franklin Sharp was re-booked for Battery By Strangulation, Attempted Murder, and Battery By Prisoner, Justice Court Case Number 16F14684X.

51.     The Complaint and Arrest Report in Justice Court Case Number 16F14684X allege that on September 4, 2016, at approximately 0120 hours, Franklin Sharp attacked inmate Joseph Barrese and attempted to strangle him using a cloth-like material.

52.     The Complaint and Arrest Report in Justice Court Case Number 16F14684X allege that Corrections Officer Kevin Gale heard Franklin Sharp saying, "Die, motherfucker" while squeezing the cloth-like material around Joseph Barrese's neck.

53.     The Complaint and Arrest Report in Justice Court Case Number 16F14684X allege that Corrections Officer Kevin Gale in the module witnessed the attack and was able to intervene in time to prevent Joseph Barrese from being killed by Franklin Sharp.

54.     The Complaint and Arrest Report in Justice Court Case Number 16F14684X allege that Franklin Sharp had torn a piece of cloth from his bed sheet and used it as a ligature.

55.     The Complaint and Arrest Report in Justice Court Case Number 16F14684X allege that surveillance footage shows Franklin Sharp sit up in his bed and put on his recreational shoes, which is not allowed at that time of night.

56.     The Complaint and Arrest Report in Justice Court Case Number 16F14684X allege that surveillance footage shows Franklin Sharp walking toward Joseph Barrese's bed while unraveling a piece of bed sheet he had removed from his bed.

57.     The Complaint and Arrest Report in Justice Court Case Number 16F14684X allege that surveillance footage shows Franklin Sharp standing over Joseph Barrese and then using the sheet to strangle Joseph Barrese.

58.     Corrections Officer Kevin Gale attempted to stop Franklin Sharp from strangling Joseph Barrese by deploying an electronic control device and giving verbal commands.

59.     Franklin Sharp was taken into custody.

60.     Franklin Sharp refused to speak with Corrections Officers regarding the incident.

61.     Franklin Sharp was moved to disciplinary custody for twenty-seven (27) days.

62.     On or about October 1, 2016, Franklin Sharp was released back into general custody and was placed in a cell with JEREMIAH BOWLING and no other inmates.

63.     On August 6, 2016, JEREMIAH BOWLING was arrested for Grand Larceny Auto, a nonviolent offense.

64.     Upon the Pretrial Information Sheet, at the time of his arrest on August 6, 2016, JEREMIAH BOWLING had no felony, gross misdemeanor, misdemeanor convictions, nor failures to appear.

65.     On August 26, 2016, JEREMIAH BOWLING plead guilty to Attempted Grand Larceny Auto, a Category D Felony/Gross Misdemeanor (a "wobbler"), with the State agreeing to make no recommendation at the time of sentencing, which was set for October 13, 2016.

## IV.
### FIRST CAUSE OF ACTION
**(Violation Of JEREMIAH BOWLING'S Fourteenth
Amendment Constitutional Rights Under 42 U.S.C. § 1983
Against All Defendants, And Each Of Them,
In Their Official And/Or Their Individual Capacities.)**

66.     Plaintiffs repeat and reallege each and every allegation contained in the preceding and subsequent paragraphs as though fully set forth herein.

67.     Clark County Detention Center ("CCDC") is controlled and operated by LVMPD, and at all relevant times all Defendants, and each of them, were acting under color law and acted in violation of the rights secured by the Fourteenth Amendment of the United States Constitution.

68.     At the time of his death on October 8, 2016, JEREMIAH BOWLING was a pre-trial detainee at the CCDC.

69.    As a pre-trial detainee, JEREMIAH BOWLING derived protections from the Fourteenth Amendment to the United States Constitution. *Bell v. Wolfish*, 441 U.S. 520 (1979).

70.    Among the protections derived from the Fourteenth Amendment to the United States Constitution, JEREMIAH BOWLING had the right to due process of law, including but not limited to the right to be protected from violence at the hands of another inmate.

71.    Among the protections derived from the Fourteenth Amendment to the United States Constitution, JEREMIAH BOWLING had the right to the protection of his life and liberty, including but not limited to the right to be protected from violence at the hands of another inmate.

72.    Among the protections derived from the Fourteenth Amendment to the United States Constitution, JEREMIAH BOWLING had the right to be free from cruel and unusual punishment, including but not limited to the right to be protected from violence at the hands of another inmate.

73.    A jail official violates the Fourteenth Amendment to the United States when that official is deliberately indifferent to a substantial risk of serious harm to an inmate. *Farmer v. Brennan*, 511 U.S. 825 (1994).

74.    Defendants, and each of them, had a duty to take reasonable measures to guarantee the health and safety of JEREMIAH BOWLING.

75.    This duty of Defendants, and each of them, included the duty to protect JEREMIAH BOWLING from the violence at the hands of other inmates.

//

//

//

76.    Defendants, and each of them, violated their duty when, knowing or having reason to know, that JEREMIAH BOWLING faced a substantial risk of serious harm by being celled with Franklin Sharp, disregarded that risk and failed to take reasonable measures to abate it.

77.    Defendants, and each of them, personally participated in the decision to double-cell JEREMIAH BOWLING and Franklin Sharp.

78.    Defendants, and each of them, violated JEREMIAH BOWLING'S Constitutional rights while displaying deliberate indifference to their duty to safeguard his rights, when Defendants, and each of them, placed JEREMIAH BOWLING in a double-occupancy cell with inmate Franklin Sharp.

79.    At the time he was celled with JEREMIAH BOWLING, Franklin Sharp was an experienced violent offender with an extensive criminal history, which included ten (10) felony convictions, twenty-seven (27) misdemeanor convictions and eighteen (18) failures to appear, and had been in custody of law enforcement at least twenty-six (26) times.

80.    At the time he was celled with JEREMIAH BOWLING, Franklin Sharp was in custody and awaiting trial on the violent offenses of Robbery With A Deadly Weapon and Assault With A Deadly Weapon, in which he made the victim beg for his life while he pointed a knife at him.

81.    At the time he was celled with JEREMIAH BOWLING, Franklin Sharp had been re-booked while in CCDC custody for Battery By Prisoner, Attempt Murder, and Battery By Strangulation less than 30 days earlier, for an attack in which he stated "Die Motherfucker" while he strangled cellmate Joseph Barrese (an incident which was captured on video).

MORTON LAW, PLLC
11700 West Charleston Blvd., Suite 170-65
Las Vegas, NV 89135
702.710.3333 Telephone 702.435.9828 Facsimile

82.    In contrast, at the time he was celled with Franklin Sharp, JEREMIAH BOWLING had no prior criminal nor violent history and was inexperienced with the correctional system, which is evidenced by the Pre-Trial Services Sheet.

83.    At the time he was killed by Franklin Sharp, JEREMIAH BOWLING was in custody for a nonviolent offense.

84.    At the time he was killed by Franklin Sharp, JEREMIAH BOWLING was in a weakened and vulnerable mental state, as evidenced by his prior statements that he wanted to hurt himself and was feeling despondent.

85.    At the time JEREMIAH BOWLING was killed by Franklin Sharp, Defendants DOE CORRECTIONS OFFICERS 1 through 10, and each of them, had left JEREMIAH BOWLING and Franklin Sharp unmonitored and unsupervised.

86.    When Franklin Sharp killed JEREMIAH BOWLING, he was housed in the same facility (CCDC) in which he had committed the violent attack on cellmate Joseph Barrese 34 days earlier.

87.    While JEREMIAH BOWLING was in the custody of CCDC, housed in a locked cell, unmonitored and unsupervised, with Franklin Sharp, who had recently displayed homicidal tendencies toward another inmate, JEREMIAH BOWLING was stripped of virtually every means of self-protection and was foreclosed of his access to outside aid.

88.    At the time of classification and housing of JEREMIAH BOWLING and Franklin Sharp, Defendants, and each of them, had sufficient information to properly assess and classify both JEREMIAH BOWLING and Franklin Sharp, and to determine that they were incompatible as cellmates and that under no circumstances should they be housed together.

89.     At the time Defendants, and each of them, made the decision to cell JEREMIAH BOWLING and Franklin Sharp together, Defendants, and each of them, knew or should have known that a substantial risk of serious harm to JEREMIAH BOWLING would result from placing Franklin Sharp and JEREMIAH BOWLING together in a cell.

90.     In light of the information available regarding JEREMIAH BOWLING and Franklin Sharp, the risk of serious harm to JEREMIAH BOWLING as a result of being celled with Franklin Sharp was so high that no reasonable person would have authorized the double-celling of JEREMIAH BOWLING and Franklin Sharp.

91.     Defendants, and each of them, committed acts and/or omissions that placed JEREMIAH BOWLING at an unacceptable risk of violent assault and violation of his Constitutional rights at the hands of Franklin Sharp.

92.     JEREMIAH BOWLING was deprived of his Constitutional rights not to be deprived of life or liberty without due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution, including but not limited to his right to be protected from violence at the hands of another inmate.

93.     JEREMIAH BOWLING was deprived of his Constitutional right to be free from cruel and unusual punishment as guaranteed by the Fourteenth Amendments to the United States Constitution, including but not limited to his right to be protected from violence at the hands of another inmate.

94.     Defendants, and each of them, knowingly placed JEREMIAH BOWLING at an unacceptable risk of violent assault by placing JEREMIAH BOWLING in a double occupancy cell with Franklin Sharp.

- 14 -

95.     Defendants, and each of them, had a duty to classify JEREMIAH BOWLING and Franklin Sharp based upon reasonable criteria, including but not limited to the detainee's history for violence, mental health records, and others factors reflecting reality, as a reasonable measure to protect JEREMIAH BOWLING and/or Franklin Sharp from being misclassified and, on that basis, housed inappropriately, so as to prevent the occurrence of a situation highly likely to lead to inmate-on-inmate violence.

96.     Defendants, and each of them, knew of the risk resulting from improper classification and/or inappropriate housing of an inmate, but disregarded that risk by failing to take reasonable measures to prevent the known danger that would be created by placing Franklin Sharp and JEREMIAH BOWLING together in the same cell.

97.     Defendants, and each of them, knew of the risk resulting from improper classification and/or inappropriate housing of an inmate, but failed to take the reasonable measure of placing Franklin Sharp and JEREMIAH BOWLING in separate cells.

98.     Despite the known violent tendencies of Franklin Sharp, Defendants, and each of them, failed to place Franklin Sharp in a controlled and/or supervised environment.

99.     Defendants, and each of them, were the moving force behind the series of events that ultimately led to the foreseeable harm of Franklin Sharp choking, beating, and killing JEREMIAH BOWLING.

100.    Based on the totality of the circumstances, including the ultimate outcome, the acts and omissions of Defendants, and each of them, shocks the conscience and sensibility of civilized society and is the result of deliberate indifference to serious pre-trial detainee health and safety needs as guaranteed by the Fourteenth Amendment to the United States Constitution.

101.    Defendants, and each of them, knowingly acted (and/or failed to act) in a way that exposed JEREMIAH BOWLING to an unacceptable risk of violent assault, by knowingly placing JEREMIAH BOWLING in a double occupancy unit with Franklin Sharp.

102.    Defendants NAPHCARE, INC. and/or DOE HEALTH CARE PROVIDERS 1 through 10, and each of them, knowingly acted (and/or failed to act) in a way that exposed JEREMIAH BOWLING to an unacceptable risk of violent assault, by failing to make appropriate recommendations to LVMPD regarding appropriate classification, housing, and protection of JEREMIAH BOWLING and/or failing to provide complete, accurate, and current information to LVMPD regarding JEREMIAH BOWLING's participation in his medical treatment, including, but not limited to his failure(s) to appear at appointments and his refusal(s) and/or failure(s) to observe his recommended medication regimen.

103.    The deliberate indifference displayed by Defendants, and each of them, to their responsibility for JEREMIAH BOWLING's health and safety and to violations of JEREMIAH BOWLING's Constitutional rights entitles Plaintiffs to an award of punitive and/or exemplary damages to the extent allowed by law.

104.    The deliberate indifference displayed by Defendants NAPHCARE, INC. and/or DOE HEALTH CARE PROVIDERS 1 through 10, and each of them, to their responsibility for JEREMIAH BOWLING's health and safety and to violations of JEREMIAH BOWLING's Constitutional rights entitles Plaintiffs to an award of punitive and/or exemplary damages to the extent allowed by law.

105.    Because of the acts and/or omissions of Defendants, and each of them, it has become necessary for Plaintiffs to retain the services of an attorney to pursue this action, and

- 16 -

Plaintiffs are entitled to an award of reasonable attorney's fees and costs in prosecuting this action pursuant to 42 United States Code Section 1988.

## V.
## SECOND CAUSE OF ACTION
**(Municipal Liability Pursuant to 42 U.S.C. § 1983
Against Defendants LVMPD, NAPHCARE, INC., and
DOE HEALTH CARE PROVIDERS 1 through 10)**

106.    Plaintiffs repeat and reallege each and every allegation contained in the preceding and subsequent paragraphs as though fully set forth herein.

107.    At the time of his death on October 8, 2016, JEREMIAH BOWLING was a pre-trial detainee at CCDC.

108.    As a pre-trial detainee, JEREMIAH BOWLING derived protections from the Fourteenth Amendment to the United States Constitution. *Bell v. Wolfish*, 441 U.S. 520 (1979).

109.    Among the protections derived from the Fourteenth Amendment to the United States Constitution, JEREMIAH BOWLING had the right to due process of law, including but not limited to the right to be protected from violence at the hands of another inmate.

110.    Among the protections derived from the Fourteenth Amendment to the United States Constitution, JEREMIAH BOWLING had the right to the protection of his life and liberty, including but not limited to the right to be protected from violence at the hands of another inmate.

111.    Among the protections derived from the Fourteenth Amendment to the United States Constitution, JEREMIAH BOWLING had the right to be free from cruel and unusual punishment, including but not limited to the right to be protected from violence at the hands of another inmate.

112.    JEREMIAH BOWLING was choked, beaten and killed while he was locked in a cell, unsupervised and unmonitored, with a known violent offender, Franklin Sharp, who had strangled another inmate only 34 days earlier.

113.    JEREMIAH BOWLING was deprived of his Constitutional rights not to be deprived of life or liberty without due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution

114.    JEREMIAH BOWLING was deprived of his Constitutional right to be free from cruel and unusual punishment as guaranteed by the Fourteenth Amendment to the United States Constitution.

115.    Prior to October 1, 2016, LVMPD implemented, executed, developed, and maintained policies, procedures, practices, customs and/or usage that exhibited deliberate indifference to the Constitutional rights of inmates at CCDC.

116.    Prior to October 1, 2016, the deliberate indifference of LVMPD to the Constitutional rights of inmates at CCDC subjected or caused inmates to be deprived of their Constitutional rights, including but not limited to their right to be protected from violence at the hands of another inmate.

117.    At the time Franklin Sharp and JEREMIAH BOWLING were celled together, it was the policy, practice, and/or custom of LVMPD to improperly cell inmates who were violent with nonviolent and/or vulnerable inmates.

118.    At the time Franklin Sharp and JEREMIAH BOWLING were celled together, it was the policy, practice, and/or custom of LVMPD to leave inmates unsupervised and unmonitored.

119.   At the time Franklin Sharp and JEREMIAH BOWLING were celled together, these policies, procedures, practices, customs and/or usage of LVMPD created a substantial risk of serious harm to inmates.

120.   Defendant LVMPD acted with deliberate indifference to the substantial risk of serious harm to inmates created by these policies, procedures, practices, customs and/or usage.

121.   These policies, procedures, practices, customs and/or usage demonstrated a deliberate indifference by LVMPD to the Constitutional rights of inmates at CCDC, and caused, in part or in whole, the violations of JEREMIAH BOWLING's rights alleged herein.

122.   Prior to October 1, 2016, Defendants NAPHCARE, INC. and/or DOE HEALTH CARE PROVIDERS 1 through 10, and each of them, implemented, executed, developed, and maintained policies, procedures, practices, customs and/or usage that exhibited deliberate indifference to the Constitutional rights of inmates at CCDC.

123.   Prior to October 1, 2016, the deliberate indifference of Defendants NAPHCARE, INC. and/or DOE HEALTH CARE PROVIDERS 1 through 10, and each of them, to the Constitutional rights of inmates at CCDC subjected or caused inmates to be deprived of their Constitutional rights, including but not limited to their right to be protected from violence at the hands of another inmate.

124.   At the time Franklin Sharp and JEREMIAH BOWLING were celled together, it was the policy, practice, and/or custom of Defendants NAPHCARE, INC. and/or DOE HEALTH CARE PROVIDERS 1 through 10, and each of them, to fail and/or neglect to make appropriate recommendations to LVMPD regarding appropriate classification, housing, and protection of inmates at CCDC, including but not limited to Franklin Sharp and JEREMIAH BOWLING.

125.   At the time Franklin Sharp and JEREMIAH BOWLING were celled together, it was the policy, practice, and/or custom of Defendants NAPHCARE, INC. and/or DOE HEALTH CARE PROVIDERS 1 through 10, and each of them, to fail and/or neglect to provide complete, accurate, and current information to LVMPD regarding JEREMIAH BOWLING's participation in medical treatment, including, but not limited to appearance at appointments and observation of recommended medication regimen.

126.   At the time Franklin Sharp and JEREMIAH BOWLING were celled together, these policies, procedures, practices, customs and/or usage of Defendants NAPHCARE, INC. and/or DOE HEALTH CARE PROVIDERS 1 through 10, and each of them, created a substantial risk of serious harm to JEREMIAH BOWLING.

127.   Defendants NAPHCARE, INC. and/or DOE HEALTH CARE PROVIDERS 1 through 10, and each of them, acted with deliberate indifference to the substantial risk of serious harm to JEREMIAH BOWLING created by these policies, procedures, practices, customs and/or usage.

128.   These policies, procedures, practices, customs and/or usage demonstrated a deliberate indifference by Defendants NAPHCARE, INC. and/or DOE HEALTH CARE PROVIDERS 1 through 10, and each of them, to the Constitutional rights of JEREMIAH BOWLING, and caused, in part or in whole, the violations of JEREMIAH BOWLING's rights alleged herein.

129.   The creation, implementation, and/or maintenance of the above-described policies, procedures, practices, customs and/or usage by Defendants NAPHCARE, INC. and/or DOE HEALTH CARE PROVIDERS 1 through 10, and each of them, demonstrate a deliberate

indifference to the Constitutional rights of JEREMIAH BOWLING and were the moving force behind the Constitutional violations alleged herein.

130.   The creation, implementation, and/or maintenance of the above-described policies, procedures, practices, customs and/or usage by Defendants NAPHCARE, INC. and/or DOE HEALTH CARE PROVIDERS 1 through 10, and each of them demonstrate a deliberate indifference to the substantial risk of serious harm to JEREMIAH BOWLING.

131.   Defendant NAPHCARE, INC.'s creation, implementation, and/or maintenance of the above-described policies, procedures, practices, customs and/or usage resulted in the death of JEREMIAH BOWLING.

132.   Prior to the homicide of JEREMIAH BOWLING by Franklin Sharp, on at least two separate occasions, serious injury and/or death of an inmate at the hands of another inmate occurred as a result of the flawed design, policies, procedures, practices, customs and/or usage of LVMPD.

133.   Prior to the homicide of JEREMIAH BOWLING by Franklin Sharp, on at least two separate occasions, serious injury and/or death of an inmate at the hands of another inmate occurred as a result of the flawed design, policies, procedures, practices, customs and/or usage of LVMPD.

134.   On or about July 29, 2011, inmate Carl Guilford ("Guilford") choked and stabbed to death cellmate Francesco Sanfilippo ("Sanfilippo") and was charged with murder in Justice Court Case Number 11F13412X.

135.   At the time he killed Sanfilippo, Guilford was being held at the CCDC on a charge of murder in District Court Case Number C-12-274470-1.

//

MORTON LAW, PLLC
11700 West Charleston Blvd., Suite 170-65
Las Vegas, NV 89135
702.710.3333 Telephone 702.435.9828 Facsimile

136.   At the time he was killed by Guilford, Sanfilippo had no history of violence.

137.   At the time he killed Sanfilippo, Guilford had a known history of mental health problems and a known history of violence.

138.   LVMPD directly caused Sanfilippo, a nonviolent offender, to be celled with a mentally ill and violent individual, Guilford, who had admitted killing his six-year old nephew and who had been acting out just days prior to killing Sanfilippo.

139.   At the time Sanfilippo was killed by Guilford, the two cellmates were locked in their cell, unsupervised and unmonitored, without access to a two-way audio communication system.

140.   LVMPD made the deliberate decision to house a violent offender, Guilford, with a nonviolent offender, Sanfilippo.

141.   In part or in whole as a result of the policies, procedures, practices, customs and/or usage of LVMPD in not properly classifying inmates and, on that basis, failing to separate violent inmates from nonviolent and/or vulnerable inmates, Sanfilippo was killed at the hands of another inmate, Guilford.

142.   On September 4, 2016, 34 days before he killed JEREMIAH BOWLING, inmate Franklin Sharp attacked fellow inmate Joseph Barrese while Barrese was sleeping and attempted to strangle Barrese using a piece of a bedsheet as a ligature.

143.   At the time he was attacked by Franklin Sharp, Barrese was in custody for a nonviolent offense, Grand Larceny Auto.

144.   At the time he attacked Barrese, Franklin Sharp had a history of violence and was awaiting a jury trial on charges of Robbery With Use Of A Deadly Weapon and Assault With A Deadly Weapon.

145.    As a result of his attack on Barrese, Franklin Sharp was charged with Battery By Prisoner, Attempt Murder, and Battery By Strangulation in Justice Court Case Number 16F14684X.

146.    LVMPD made the deliberate decision to house a violent offender, Franklin Sharp, with a nonviolent offender, Barrese.

147.    In part or in whole as a result of the policies, procedures, practices, customs and/or usage of LVMPD in not properly classifying inmates and, on that basis, failing to separate violent inmates from nonviolent and/or vulnerable inmates, Barrese was subjected to violence at the hands of another inmate, Franklin Sharp.

148.    In or about 1997-1998, the United States Department of Justice ("DOJ") conducted investigations and findings at CCDC, finding that the design, policies, procedures, practices, customs and/or usage of the CCDC were flawed.

149.    In its report resulting from its investigation in or about 1997-1998 (the "1998 DOJ Report"), the DOJ stated that CCDC's improper design, and its policies, procedures, practices, customs and/or usage for classifying and housing inmates violated inmates' Constitutional rights and led directly to inmate deaths and serious injury at the hands of inmates who were known to be violent and/or mentally ill.

150.    The DOJ determined that the isolated setting of the cells made it difficult to monitor inmate-on-inmate violence.

151.    The DOJ determined that sound supervision is absent in the majority of the cells, and the cells are not equipped with audible two-way communication capability.

152.    The DOJ determined that sight supervision is absent in the majority of the cells, and the cells are not equipped for real-time video monitoring.

153.    The DOJ determined that inability of CCDC staff to see and hear in real-time what is occurring inside a cell where inmates are housed together constitutes a flawed design.

154.    The design of CCDC was deliberately chosen from among other alternatives by LVMPD, and thus constitutes a formal policy. *Castro v. County of Los Angeles*, 797 F.3d 654 (9th Cir. 2015).

155.    The deaths of Sanfilippo and JEREMIAH BOWLING, the serious injuries to Joseph Barrese, and other incidents involving serious death and/or injury to inmates, as articulated in the 1998 DOJ report, were caused, in whole or in part, by the flawed design of CCDC.

156.    LVMPD was responsible for creating the policies, procedures, practices, customs and/or usage for classifying and housing inmates at CCDC that were in effect at the time of JEREMIAH BOWLING's incarceration and death.

157.    Under the policies, procedures, practices, customs and/or usage of LVMPD in effect at the time of JEREMIAH BOWLING's incarceration and death, violent inmates were frequently improperly classified and, on the basis of that improper classification, housed with nonviolent and/or vulnerable inmates.

158.    Under the policies, procedures, practices, customs and/or usage of LVMPD in effect at the time of JEREMIAH BOWLING's incarceration and death, the persistent and widespread practice of misclassifying inmates and improperly housing them on that basis, existed whether or not authorized by written policy of LVMPD.

//

//

//

159.    Under the policies, procedures, practices, customs and/or usage of LVMPD in effect at the time of JEREMIAH BOWLING's incarceration and death, the persistent and widespread practice of misclassifying inmates and improperly housing them on that basis was so permanent and well settled as to constitute a custom or usage with the force of law.

160.    LVMPD, pursuant to its policies, procedures, practices, customs and/or usage, housed inmates who were known to have prior violent conduct and with inmates who were known to be nonviolent and/or vulnerable.

161.    Through its policies, procedures, practices, customs and/or usage of improperly classifying and housing inmates, LVMPD was a moving force behind the injury that occurred.

162.    The policies, procedures, practices, customs and/or usage of improperly classifying and housing inmates and the outcomes that have resulted demonstrate LVMPD's deliberate indifference to the health and safety of inmates, including but not limited to JEREMIAH BOWLING.

163.    Further, a high degree of predictability also supports an inference of causation—that housing a violent inmate with a nonviolent inmate or vulnerable inmate will result in death or serious injury to the nonviolent inmate—and that the municipality's indifference led directly to the very consequence that was so predictable. *City of Canton, Ohio v. Harris,* 489 U.S. 378 (1989).

164.    The risk of harm to JEREMIAH BOWLING was so "obvious" that LVMPD can be said to have been deliberately indifferent to its possibility. *Bd. Of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 407 (1997).

//

//

MORTON LAW, PLLC
11700 West Charleston Blvd., Suite 170-65
Las Vegas, NV 89135
702.710.3333 Telephone 702.435.9828 Facsimile

165.    JEREMIAH BOWLING's rights under the Fourteenth Amendment to the United States Constitution were violated when Defendants created and implemented policies, procedures, practices, customs and/or usage, and took actions and/or failed to take reasonable protective actions, that caused JEREMIAH BOWLING to suffer cruel and unusual punishment and a violation of his due process rights pursuant to the Fourteenth Amendment.

166.    The policies, procedures, practices, customs and/or usage of Defendant LVMPD were to inadequately supervise and train its corrections officers in the proper maintenance and safety of its jail population by failing to implement safety measures to protect nonviolent inmates from violent inmates and mentally ill inmates from non-mentally ill inmates.

167.    It was the policies, procedures, practices, customs and/or usage of LVMPD to inadequately supervise and train its correctional officers, including the Defendant Corrections Officers, thereby failing to adequately discourage further Constitutional violations on the part of its correctional officers.

168.    LVMPD did not require appropriate in-service training or re-training of corrections officers who were known to have engaged in misconduct and failures to protect detainees by classification.

169.    As a result of the above described policies, procedures, practices, customs and/or usage, Defendants ANGELO LARRY, ROLANDO TREVINO, and DOE CORRECTIONS OFFICERS 1 through 10, and each of them, believed that their actions would not be properly monitored by supervisory officers and that misconduct would not be investigated or sanctioned, but would be tolerated, resulting in a dangerous and wholly unsafe correctional facility.

//

//

MORTON
LAW FIRM

170.    Regardless of the established multiple prior instances of inmate-on-inmate violence that occurred at CCDC, a single incident, accompanied by a showing that LVMPD failed to train employees to handle recurring situations presenting an obvious potential for a violation, triggers municipal liability.

171.    Regardless of the established multiple prior instances of inmate-on-inmate violence that occurred at CCDC, the prior assault on Barrese by Franklin Sharp, accompanied by a showing that LVMPD subsequently failed to train employees to appropriately classify and appropriately house Franklin Sharp, presenting an obvious potential for a violation, triggers municipal liability.

172.    LVMPD, through one or more of its municipal officials with final policymaking authority, ratified the unconstitutional conduct described herein, triggering municipal liability.

173.    LVMPD's creation, implementation, and/or maintenance of the above-described policies, procedures, practices, customs and/or usage demonstrate a deliberate indifference to the Constitutional rights of inmates at CCDC and were the moving force behind the Constitutional violations alleged herein.

174.    JEREMIAH BOWLING was deprived of his Fourteenth Amendment Constitutional right to be housed in an environment in which he would be protected from physical attacks and violence at the hands of another inmate.

175.    LVMPD's policies, procedures, practices, customs and/or usage regarding the inadequate training and/or supervision of its corrections officers was unconstitutional in that it was deliberately indifferent to the substantial risk of serious harm to inmates housed at the CCDC.

176. This failure to train and/or supervise resulted in the death of JEREMIAH BOWLING.

177. As a direct and proximate result of Defendants' conduct as herein alleged, JEREMIAH BOWLING and Plaintiff PATRICIA FITZPATRICK have been damaged, in amounts to be proven at trial.

178. As a direct and proximate results of Defendants' conduct as herein alleged, Plaintiffs have been required to retain legal counsel to bring this action, and are entitled to recover reasonable attorney's fees and costs.

## VI.
### THIRD CAUSE OF ACTION
**(Wrongful Death against all Defendants Pursuant To NRS § 41.085, individually and/or in their respective official capacities)**

179. Plaintiffs repeat and reallege each and every allegation contained in the preceding and subsequent paragraphs as though fully set forth herein.

180. Plaintiffs PATRICIA FITZPATRICK and ROBERT L. ANSARA are Co-Special Administrators and Personal Representatives of the Estate of JEREMIAH BOWLING.

181. Plaintiff PATRICIA FITZPATRICK is the Heir of JEREMIAH BOWLING.

182. Defendants, individually and/or collectively, proximately caused the death of JEREMIAH BOWLING by their actions, omissions, and conduct as described herein.

183. Defendants, individually and/or collectively, intentionally, wantonly, willfully, maliciously, oppressively, and without just provocation or cause proximately caused the death of JEREMIAH BOWLING and proximately caused the damages sustained by Plaintiffs by causing JEREMIAH BOWLING to be placed in a two-person cell with a known violent inmate, Franklin Sharp.

MORTON LAW, PLLC
11700 West Charleston Blvd., Suite 170-65
Las Vegas, NV 89135
702.710.3333 Telephone 702.435.9828 Facsimile

184.   At the time that Defendants caused JEREMIAH BOWLING to be placed in a two-person cell with Franklin Sharp, Defendants, individually and/or collectively, had actual knowledge of Franklin Sharp's propensity for violence, his violent record, and his violent behavior toward his former cellmate, Joseph Barrese, less than 30 days earlier.

185.   The actions and/or omissions of Defendants, and each of them, in intentionally disregarding the rights of JEREMIAH BOWLING and of the Plaintiffs were willful, oppressive, malicious, and with wanton disregard for the established rights of the Plaintiffs and JEREMIAH BOWLING.

186.   In causing JEREMIAH BOWLING to be placed in a two-person cell with Franklin Sharp, Defendants, and each of them, acted with reckless disregard to circumstances and conditions that caused Defendants to know, or to have reason to know, that such actions and/or omissions would, in a high degree of probability, result in substantial harm to JEREMIAH BOWLING.

187.   In failing to make appropriate recommendations to LVMPD regarding appropriate classification, housing, and protection of JEREMIAH BOWLING and/or failing to provide complete, accurate, and current information to LVMPD regarding JEREMIAH BOWLING's participation in his medical treatment, including, but not limited to his failure(s) to appear at appointments and his refusal(s) and/or failure(s) to observe his recommended medication regimen, Defendants NAPHCARE, INC. and/or DOE HEALTH CARE PROVIDERS 1 through 10, and each of them, acted with reckless disregard to circumstances and conditions that caused Defendants NAPHCARE, INC. and/or DOE HEALTH CARE PROVIDERS 1 through 10, and each of them,  to know, or to have reason to know, that such

actions and/or omissions would, in a high degree of probability, result in substantial harm to JEREMIAH BOWLING.

188.    The actions and/or omissions of Defendants, and each of them, were in violation of applicable Nevada statutes, regulations, and/or ordinances.

189.    The Nevada statutes, regulations, and/or ordinances violated by Defendants, and each of them, were intended to protect a class of persons that included JEREMIAH BOWLING.

190.    The injuries and damages sustained by JEREMIAH BOWLING were of the type and nature intended to be prevented by the Nevada statutes, regulations, and/or ordinances violated by Defendants.

191.    The injuries and damages sustained by JEREMIAH BOWLING, including but not limited to death, were caused, in whole or in part, by Defendants' violation(s), individually and/or collectively, of these Nevada statutes, regulations, and/or ordinances.

192.    Defendants, individually and/or collectively, failed to keep JEREMIAH BOWLING safe while in their care, custody, and control.

193.    The actions and/or omissions of Defendants, individually and/or collectively, were authorized and/or ratified by the respective supervisors of Defendants.

194.    That as a direct and proximate result of Defendants' conduct as herein alleged, JEREMIAH BOWLING and Plaintiff PATRICIA FITZPATRICK have been damaged, in amounts to be proven at trial.

195.    That as a direct and proximate results of Defendants' conduct as herein alleged, Plaintiffs have been required to retain legal counsel to bring this action, and are entitled to recover reasonable attorney's fees and costs.

//

MORTON LAW, PLLC
11700 West Charleston Blvd., Suite 170-65
Las Vegas, NV 89135
702.710.3333 Telephone 702.435.9828 Facsimile

MORTON
LAW FIRM

MORTON LAW, PLLC
11700 West Charleston Blvd., Suite 170-65
Las Vegas, NV 89135
702.710.3333 Telephone 702.435.9828 Facsimile

## VII.
## <u>FOURTH CAUSE OF ACTION</u>
### (Negligence against NAPHCARE, INC. and DOE HEALTH CARE PROVIDERS 1 through 10)

196.    Plaintiffs repeat and reallege each and every allegation contained in the preceding and subsequent paragraphs as though fully set forth herein.

197.    Defendants NAPHCARE, INC. and/or DOE HEALTH CARE PROVIDERS 1 through 10, and each of them, had a duty to make appropriate recommendations to LVMPD regarding appropriate classification, housing, and protection of inmates at CCDC, including but not limited to Franklin Sharp and JEREMIAH BOWLING.

198.    Defendants NAPHCARE, INC. and/or DOE HEALTH CARE PROVIDERS 1 through 10, and each of them, had a duty to provide complete, accurate, and current information to LVMPD regarding JEREMIAH BOWLING'S participation in medical treatment, including, but not limited to his appearance at appointments and his observation of recommended medication regimen.

199.    Defendants NAPHCARE, INC. and/or DOE HEALTH CARE PROVIDERS 1 through 10, and each of them, breached these duties by, *inter alia,* failing to make appropriate recommendations to LVMPD regarding appropriate classification, housing, and protection of JEREMIAH BOWLING.

200.    Defendants NAPHCARE, INC. and/or DOE HEALTH CARE PROVIDERS 1 through 10, and each of them, breached these duties by, *inter alia,* failing to provide complete, accurate, and current information to LVMPD regarding JEREMIAH BOWLING's participation in his medical treatment, including, but not limited to his failure(s) to appear at appointments and his refusal(s) and/or failure(s) to observe his recommended medication regimen.

201.    As a direct and proximate result of these breaches of duty by Defendants NAPHCARE, INC. and/or DOE HEALTH CARE PROVIDERS 1 through 10, and each of them, JEREMIAH BOWLING and Plaintiff PATRICIA FITZPATRICK have been damaged, in amounts to be proven at trial.

202.    As a direct and proximate result of these breaches of duty by Defendants NAPHCARE, INC. and/or DOE HEALTH CARE PROVIDERS 1 through 10, and each of them, Plaintiffs have been required to retain legal counsel to bring this action, and are entitled to recover reasonable attorney's fees and costs.

## VIII.
## PRAYER FOR RELIEF

WHEREFORE Plaintiffs, while expressly reserving their right to amend this Second Amended Complaint prior to or at the time of trial, pray for judgment against Defendants, and each of them, as follows:

1.    For special, general, hedonic, and compensatory damages against all Defendants, individually and/or collectively, jointly and/or severally, in an amount to be proven at trial, but not less than $100,000,000.00 (ONE HUNDRED MILLION DOLLARS AND ZERO CENTS);

2.    For punitive damages against the individual Defendants in their individual capacities and/or their official capacities, individually and/or collectively, jointly and/or severally, in an amount to be determined at trial, but not less than $200,000,000.00 (TWO HUNDRED MILLION DOLLARS AND ZERO CENTS);

//

//

//

//



3.      For attorney's fees and costs of suit incurred herein;

4.      For all applicable interest at the statutory rate; and

5.      For such other and further relief that this Court deems just and proper.

DATED THIS <u>21st</u> day of February, 2018.

                              **MORTON LAW, PLLC**

                              */s/ Nadine M. Morton*
                              _____
                              NADINE M. MORTON, ESQ.
                              Nevada Bar No. 8583
                              11700 West Charleston Boulevard
                              Suite 170-65
                              Las Vegas, NV 89135

                              *Attorney for Plaintiff*