1

2

3 **UNITED STATES DISTRICT COURT**

4 **DISTRICT OF NEVADA**

5 \* \* \*

6 PATRICIA FITZPATRICK, et al.,                    Case No. 2:17-cv-1886-JAD-BNW

7                         Plaintiffs,

8         v.                                       **ORDER**

9 LAS VEGAS METROPOLITAN POLICE
   DEPARTMENT, et al.,
10
                          Defendants.
11

12

13         Presently before the court is Plaintiffs' Motion to Compel Rule-Compliant Responses to

14 Request for Production Nos. 3 and 4; to Compel Defendant's Designation of FRCP 30(b)(6)

15 Designees; For an Adverse Inference Jury Instruction as a Sanction For Defendant's Spoliation of

16 Evidence; and For Attorney's Fees and Costs Pursuant to FRCP 37(a)(5) (ECF No. 103),

17 Defendants' opposition (ECF No. 107), and Plaintiffs' reply (ECF No. 109), filed on May 28,

18 2019, June 11, 2019, and June 18, 2019, respectively. Plaintiffs' motion is granted in part and

19 denied in part.

20                                  **BACKGROUND**

21 **I.      The Case**

22         This case was originally filed on July 10, 2017. (ECF No. 1.) It arises out of the murder of

23 an inmate at Clark County Detention Center, Jeremiah Bowling, by his cellmate, Franklin Sharp,

24 on October 8, 2016. (ECF No. 72.)

25         The following facts are undisputed by Defendants:  On the day of the murder, correction

26 officer ("CO") Thomas Striemer was working in Module 3B of the jail where Mr. Bowling and

27 Mr. Sharp were housed as cellmates in cell 21. (ECF No. 107 at 2-3.) After dinner that day, Mr.

28 Bowling and Mr. Sharp returned to their cell. (*Id.* at 3.) At approximately 5:01 p.m., CO Striemer

conducted his final walk-through of Module 3B. (*Id.*) When he reached cell 21, he glanced through the window before moving away.[1] (*Id.*)

CO Angelo Larry subsequently started his shift in Module 3B at approximately 5:30 p.m. (*Id.*) When CO Larry did his initial walk-through and approached cell 21, he discovered Mr. Bowling's body on the floor. (*Id.*) Medical assistance was then called, but Mr. Bowling was not revived. (*Id.* at 3-4.) His cause of death was determined to be a combination of ligature strangulation and severe blunt force trauma to his skull. (*Id.* at 4.)

As a result of Mr. Bowling's murder, Plaintiffs Patricia Fitzpatrick and Robert Ansara, as administrators of Mr. Bowling's estate and his heirs, sued the Las Vegas Metropolitan Police Department ("LVMPD") and three corrections officers (Angelo Larry, Rolando Trevino, and Thomas Striemer). (ECF No. 72.) Plaintiffs allege several causes of action, including that Defendants violated Mr. Bowling's Eighth and Fourteenth Amendment rights. (*Id.*)

## II.     Plaintiffs' Motion

Plaintiffs now move to compel Defendants to (1) produce inmate locator cards (in particular, for Mr. Sharp for the day of the murder) in response to Request to Produce Nos. 3 and 4; and (2) designate witnesses for Plaintiffs' noticed 30(b)(6) topics. (ECF No. 103.) To the extent Defendants do not have any additional locator cards to produce, Plaintiffs also seek an adverse inference sanction for spoliation. (*Id.*) Finally, Plaintiffs ask the court to award them the fees and cost they incurred in bringing this motion. (*Id.*)

### A.     Requests for Production 3 and 4

On March 26, 2018, Plaintiffs served Requests for Production Nos. 3 and 4 on Defendants. (ECF No. 107-1.) These requests sought the inmate files of Mr. Sharp (Request No. 3) and Mr. Bowling (Request No. 4), including, specifically, their locator cards. (*Id.*) Locator cards are used, at least in part, to identify inmates and ensure that the right inmates are in the right places within the jail. (*See* ECF No. 103 at 10-11.) The locator cards of each inmate include a

---

[1] CO Striemer was subsequently reprimanded for failing to conduct a full and proper visual check of the module. (*Id.*)

1   picture, the inmate's identification number, physical identifiers, charges the inmate came into the

2   jail facing, and a few other pieces of information. (*Id.*) The locator cards are updated from time to

3   time (meaning the jail creates a new locator card for an inmate) when changes to the information

4   on the card need to be made. (*See* ECF No. 107 at 20.) For example, an inmate will get a new

5   locator card if his appearance changes substantially (e.g., he gains a significant amount of weight

6   or shaves his head). (*Id.*) The charges on an inmate's card can also change. For example, some

7   locator cards eventually produced for Mr. Sharp included an open murder charge for killing Mr.

8   Bowling, which could not have been on his locator card when he first arrived at the jail. (ECF No.

9   103 at 12.)

10          On June 13, 2018, Defendants produced several thousand documents, including

11  documents responsive to Requests Nos. 3 and 4. (ECF No. 107-2.) On November 1, 2018,

12  Plaintiffs emailed Defendants, stated that locator cards were not included in Defendants'

13  production, and asked Defendants to supplement their production. (ECF No. 107-3.)

14          On December 11, 2018, Defendants produced two locator cards in use for Mr. Sharp for

15  dates after he murdered Mr. Bowling. (ECF No. 107-5.)

16          On March 12, 2019, Plaintiffs again asked Defendants to produce locator cards for Mr.

17  Sharp, including the one in use on the day of Mr. Bowling's murder. (ECF No. 100-10.)

18          On April 10, 2019, Defendants filed their motion for summary judgment (eight days

19  before the deadline). (ECF Nos. 82, 86.) Plaintiffs responded on May 1, 2019 (ECF No. 98). In

20  Plaintiffs' response, they raised the issue of the missing locator cards and asked the court to defer

21  ruling on Defendants' motion for summary judgment under Fed R. Civ. P. 56(d). (*Id.* at 21-22.)

22          **B.      Defendants' 30(b)(6) Deposition**

23          On November 3, 2018, Plaintiffs noticed the 30(b)(6) deposition of LVMPD. (ECF No.

24  103-3.) Their notice included 53 topics. (*Id.*) The parties subsequently exchanged several emails

25  regarding the number of topics and potential number of designees required to complete the

26  deposition. (ECF No. 103-5.) On November 19, 2018, Plaintiffs sent Defendants an email

27  identifying six topic areas that they wished to start with for Defendants' 30(b)(6) deposition.

28  (ECF No. 103-6.)

On December 12, 2018, Plaintiffs began deposing Sergeant Albright, the first of Defendants' 30(b)(6) designees. (*See* ECF No. 81; ECF No. 103 at 14.) During this deposition, the parties agreed to continue the deposition and stay discovery to mediate. (ECF No. 81.) However, the parties did not file their stipulation to stay discovery until December 19, 2018, two days after discovery closed. (*Id.*) In response, the court did not issue a blanket stay of discovery or extend all deadlines. (ECF No. 82.) Instead, the court gave the parties until April 2, 2019 to complete Defendants' 30(b)(6) deposition, if the mediation scheduled for March 22, 2019 failed. (*See id.*)

The parties mediated on March 22, 2019. (ECF No. 85.) However, the mediation was stopped early due to a medical emergency. (*Id.*) It was not clear that day, however, that the mediation failed or would not resume. (*See* ECF No. 103-2.)

On April 1, 2019, Plaintiffs emailed Defendants that they wanted to complete the 30(b)(6) deposition of Defendants' designees by April 17, 2019. (ECF No. 100-10.) Plaintiffs assert that Defendants ignored this email (*See* ECF No. 103 at 15.) In all events, it is not disputed that Sergeant Albright's deposition was not reopened and no other 30(b)(6) designee's deposition was started.

### C.     The Parties Meet and Confer and the Court Holds a Hearing

The parties met and conferred on May 14, 2019 about Defendants' incomplete 30(b)(6) deposition and failure to produce all locator cards. (*See* ECF No. 103-2.) The parties were unable to resolve their discovery dispute. Accordingly, Plaintiffs filed the motion presently before the court on May 28, 2019. (ECF No. 103.)

After reviewing the parties' briefs, the court held a hearing on July 9, 2019 and heard arguments from both parties. (ECF No. 112.) Importantly, at that hearing, defense counsel stated that a locator card for Mr. Sharp existed on the day of the murder but no longer exists. The court asked whether the locator cards were kept in an electronic format, and defense counsel suggested that they were (indicating that they were printed from some device).

1    Regarding Plaintiffs' Requests to Produce 3 and 4 (seeking locator cards), Plaintiffs argue

2    that the information on Mr. Sharp's locator card on the day of the murder is key evidence. (Mins.

3    of Proceedings (ECF No. 112); *see* ECF No. 103 at 12.) This is so, according to Plaintiffs,

4    because part of their *prima facie* case under the Eighth Amendment requires them to prove what

5    CO Striemer actually knew about Mr. Sharp on the day of the murder. (Mins. of Proceedings

6    (ECF No. 112).) And the only source of information Mr. Striemer had available to him about Mr.

7    Sharp was Mr. Sharp's locator card, which he was required by policy to look at. (ECF No. 103 at

8    12; Mins. of Proceedings (ECF No. 112).) Additionally, it is possible that the missing locator card

9    that existed on the day of the murder contained a "do not house with" designation that could be

10   key to Plaintiffs' case[2] or notes regarding the need to use shackles and chains with Mr. Sharp.

11   (Mins. of Proceedings (ECF No. 112).) Accordingly, Plaintiffs assert that Mr. Sharp's locator

12   card from the day of the murder is one of the two most relevant pieces of evidence for their case.

13   (*Id.*)

14       Plaintiffs also move to compel Defendants to designate 30(b)(6) witnesses as appropriate

15   for their previously noticed 30(b)(6) topics. (ECF No. 103.)

16       Defendants respond to Plaintiffs' motion to compel by asserting that Plaintiffs' motion is

17   untimely. (ECF No. 107 at 7-15.) Specifically, Defendants assert that Plaintiffs' motion is

18   untimely because it was filed after discovery closed and after the dispositive motion deadline.

19   (*Id*.) With regard to the locator cards, Defendants also assert that Plaintiffs did not diligently

20   pursue them during discovery. (*Id.* at 11-13.) With regard to Plaintiffs' deposition of Defendants'

21   30(b)(6) witnesses, Defendants assert that Plaintiffs did not comply with the court's order that the

22   deposition be completed by April 2, 2019. (*Id.* at 13-15.)

23       Plaintiffs also request spoliation sanctions in the form of an adverse inference, if no

24   additional locator cards exist (ECF No. 103 at 16-21), and for fees and costs incurred in bringing

25   this motion. (*Id.* at 21-22.) Defendants respond that Plaintiffs are not entitled to spoliation

26

27

[2] Such a designation may have existed and may be important to Plaintiffs' case, because Mr.
28   Sharp attempted to murder another inmate roughly a month before Mr. Bowling's murder. (*Id.*)

sanctions or fees and costs for several reasons, including: Plaintiffs' motion is untimely; Defendants fully complied with discovery; Plaintiffs did not diligently pursue discovery; Plaintiffs have not shown spoliation of evidence; Plaintiffs have not demonstrated the requested information is relevant; and Plaintiffs have not been prejudiced. (ECF No. 107 at 16-24.)

**DISCUSSION**

## I.     Timeliness of Plaintiffs' Motion to Compel

Federal Rule of Civil Procedure 16 requires the court, in all cases not otherwise exempted, to issue a scheduling order limiting time to complete discovery and file motions. *See* Fed. R. Civ. P. 16(b)(3). Rule 16 is taken seriously. *See e.g. Janicki Logging Co. v. Mateer*, 42 F.3d 561, 566 (9th Cir. 1994). "Parties must understand that they will pay a price for failure to comply strictly with scheduling and other orders . . . ." *Wong v. Regents of the Univ. Of Cal.*, 410 F.3d 1052, 1060 (9th Cir. 2005). However, neither the Federal Rules, Local Rules, nor the scheduling order in this case established a specific deadline for the parties to file discovery motions. Nonetheless, it has been the policy in this District that, absent unusual circumstances, discovery motions should be filed before the dispositive motion deadline. *See, e.g., De Jesus Rios v. Dollar Gen. Mkt.*, 2017 U.S. Dist. LEXIS 3385 (D. Nev. 2017); *Bonavito v. Nev. Prop. 1* LLC, 2014 U.S. Dist. LEXIS 150305 (D. Nev. 2014); *Krause v. Nev. Mut. Ins. Co.*, 2014 U.S. Dist. LEXIS 13727 (D. Nev. 2014); *Agarwal v. Oregon Mut. Ins. Co.*, 2013 WL 211093 (D. Nev. 2013); *Thurston v. City of N. Las Vegas*, 2011 U.S. Dist. LEXIS 96619 (D. Nev. 2011); *Kizzee v. Walmart, Inc.*, 2011 WL 3566881 (D. Ariz. 2011); *Christmas v. MERS*, 2010 U.S. Dist. LEXIS 79137 (D. Nev. 2010); *Skinner v. Ryan*, 2010 WL 4602935 (D. Ariz. 2010); *Gault v. Nabisco Biscuit Co.,* 184 F.R.D. 620 (D. Nev. 1999).

Here, Defendants rely on the above cited cases to argue that Plaintiffs' discovery motion is untimely and should be denied. (ECF No. 107.) Those cases are distinguishable from this case, however, because they did not present the same unusual circumstances that are present here. In fact, in six of the nine cases cited by Defendants, the moving party either did not give a reason for their delay or did not attempt to show any unusual circumstance. *See Gault,* 184 F.R.D. at 622; *Krause,* 2014 U.S. Dist. LEXIS 13727, at *9-10; *Kizzee,* 2011 WL 3566881, at *1; *Skinner,* 2010

WL 4602935, at *2; *Bonavito,* 2014 U.S. Dist. LEXIS 150305, at *13; and *Thurston,* 2011 U.S.

Dist. LEXIS 96619, at *2. Additionally, in *Christmas*, 2010 U.S. Dist. LEXIS 79137, at *5-6, the

court found both the discovery requests and the motion to compel were untimely, which is not the

case here. In *De Jesus Rios*, the only reason plaintiff gave for its motion to compel being filed

after summary judgment was that its response to summary judgment was its priority but did not

explain why it waited another two and half months to file its motion to compel. *De Jesus Rios*,

2017 U.S. Dist. LEXIS 3385, at *1-2. (Here, Plaintiffs do not rely on their need to respond to

summary judgment as an unusual circumstance.) Finally, in *Agarwal*, plaintiffs made several

"unusual circumstances arguments," which are different from those before this court. *See*

*Agarwal,* 2013 WL 211093, at *5-6.

**A.     Requests to Produce Numbers 3 and 4**

Here, the court finds that there are unusual circumstances that justify the court's

consideration of Plaintiffs' motion to compel locator cards. As explained in more detail below,

the unusual circumstances that exist include (1) Plaintiffs properly sought the locator cards during

discovery and followed up on their request until discovery ended in an unusual manner; (2)

Defendants' statements to Plaintiffs about the existence of additional locator cards were

ambiguous; (3) Defendants' potential failure to meet their obligations to search electronic records

for locator cards; and (4) Defendants' potential spoliation of evidence.

First, this is not a case in which Plaintiffs either did not request the sought-after

documents during discovery or sat on their hands after they were not produced. Rather, Plaintiffs

requested the locator cards during discovery and followed up on their request with Defendants

before discovery closed. (ECF Nos. 107-1; 107-3.) Discovery then closed somewhat

unexpectedly when the court denied the parties' stipulation to stay discovery. (*See* ECF No. 82.)

Still, Plaintiffs followed up on their request for locator cards multiple times after discovery

closed. (*See, e.g.*, ECF No. 100-10; ECF No. 103-2.) Additionally, the parties both seemed to stop

engaging in discovery while they were waiting to mediate (and mediation is, of course, something

the court encourages to save the parties' and court's resources). Further complicating matters,

there was not a clear end to the mediation, because it was stopped early due to a medical

1    emergency. (ECF No. 103-2.) Thus, Plaintiffs' repeated requests for the locator cards before the

2    dispositive motion deadline combined with the unusual end of discovery justifies the court's

3    consideration of Plaintiffs' motion.

4          Second, it appears to the court that Defendants were not particularly clear with Plaintiffs

5    during the discovery process regarding the status of the locator cards in question.  That is,

6    Defendants stated to Plaintiffs that all locator cards had been produced, when in reality, at least

7    one was missing and had not been produced. (*See* ECF No. 107 at 13 (*Defendants* state that, "[i]n

8    March, 2019, just before the Parties' scheduled mediation, Plaintiffs again asked about locator

9    cards and were told that all of them had been provided in December, 2018."); *see also id.* at 6

10   ("[I]n March, 2019, long after the expiration of discovery, Plaintiffs made a second request for

11   locator cards. Again, Defendants answered promptly, communicating that all locator cards had

12   been provided during discovery.").) As previously noted, at the parties' July 9, 2019 hearing,

13   defense counsel stated that a locator card existed for Mr. Sharp on the day of the murder but no

14   longer exists. Thus, it appears that Plaintiffs repeatedly attempted to obtain the relevant locator

15   cards in discovery, and Defendants were not specific enough about the fact that at least one card

16   was lost or destroyed.

17         Third, based on defense counsel's statements to the court on July 9, 2019, the court is not

18   confident that Defendants met their discovery obligations to search for electronic copies of

19   locator cards. The court asked defense counsel at this hearing whether the locator cards were

20   stored in an electronic format. Defense counsel appeared to know that they were printed but did

21   not know from where. Accordingly, the court is unsure whether Defendants' electronic records

22   were thoroughly searched for locator cards.

23         Fourth, Plaintiffs may have a spoliation of evidence argument. (The court is not

24   expressing any opinion on the merits of such an argument at this time.) Again, defense counsel

25   represented at the July 9, 2019 hearing that a locator card existed on the day of the murder for Mr.

26   Sharp and no longer exists. If this is so, and no electronic copies of this card exist, Plaintiffs may

27   have a spoliation argument.

28

1       For all of these reasons, the court finds that unusual circumstances exist in this case such

2  that the court can address the merits of Plaintiffs' motion to compel responses to Requests to

3  Produce Numbers 3 and 4.

4       The court finds that the locator cards for Mr. Bowling and Mr. Sharp are relevant to

5  Plaintiffs' claims and discoverable (a fact that Defendants do not appear to genuinely dispute,

6  given their production of some locator cards). A question remains, however, as to whether any

7  additional locator cards exist. Accordingly, the court orders Defendants to diligently search for

8  both electronic and hard copy locator cards for Mr. Sharp and Mr. Bowling that have not already

9  been produced. Defendants shall have 14 days to complete this search, produce any such locator

10  cards to Plaintiffs, and file a status report with the court stating which additional locator cards

11  were located and produced, if any.

12       **B.     Request for 30(b)(6) Deposition of Defendant**

13       The court finds that there are unusual circumstances that justify the court's consideration

14  of Plaintiffs' motion to compel Defendants to produce Sergeant Albright for the remainder of her

15  deposition. The unusual circumstances that exist include the fact that (1) during Sergeant

16  Albright's deposition, the parties agreed to continue the deposition to mediate (ECF No. 81); (2)

17  the parties' stipulated to stay discovery to mediate and intended to complete depositions after the

18  mediation (*id.*); (3) the court denied the parties' stipulation to stay discovery but allowed the

19  parties until April 2, 2019 to complete Defendants' 30(b)(6) deposition, if mediation failed (ECF

20  No. 82); and (4) there was not a clear ending to the mediation, as it was cut short because of a

21  medical emergency. (ECF No. 85; ECF No. 103-2). Together, these factors present unusual

22  circumstances demonstrating that Plaintiffs were working to depose Sergeant Albright but were

23  unable to complete her deposition due to a somewhat odd series of events. And because

24  Defendants do not challenge this portion of Plaintiffs' motion on any grounds besides timeliness,

25  Defendants are ordered to produce Sergeant Albright for the remainder of her deposition.

26       With regard to Plaintiffs' request that Defendants produce 30(b)(6) designees for the

27  remaining topics (besides the topic for which Sergeant Albright was designated), the court does

28  not find any unusual circumstances that would justify compelling Defendants to produce such

witnesses. This is so because Plaintiffs knew that the court lacked relevant information about the scope of the 30(b)(6) deposition that made the timeframe allotted after mediation "impossible even if both parties had worked" to depose all of Defendants' designees. (ECF No. 100-10.) Despite knowing this, however, Plaintiffs neither pressed forward with depositions before mediation nor sought relief from the April 2, 2019 deadline.[3] Accordingly, the court will deny the portion of Plaintiffs' motion to compel that seeks to have Defendants designate additional 30(b)(6) witnesses and produce them for depositions.

## II.     Request for an Adverse Inference as a Sanction for Spoliation

Plaintiffs' request for an adverse inference is premature. Neither Plaintiffs nor the court knows if there are truly no additional locator cards in existence. As stated above, the court is giving Defendants 14 days to search for electronic and hard copy versions of the missing locator card(s). Accordingly, the court denies Plaintiffs' request for an adverse inference without prejudice.

## III.     Plaintiffs' Request for Fees and Expenses

Under Fed. R. Civ. Pro. 37(a)(5)(C), if a motion to compel is granted in part and denied in part, the court may, after giving the parties an opportunity to be heard, apportion the reasonable expenses for the motion. The court in its discretion does not find it appropriate to apportion expenses for this motion and denies Plaintiffs' request that it do so.

IT IS THEREFORE ORDERED that Plaintiffs' Motion to Compel Rule-Compliant Responses to Request for Production Nos. 3 and 4; to Compel Defendant's Designation of FRCP 30(b)(6) Designees; For an Adverse Inference Jury Instruction as a Sanction For Defendant's Spoliation of Evidence; and For Attorney's Fees and Costs Pursuant to FRCP 37(a)(5) (ECF No. 103) is GRANTED IN PART and DENIED IN PART.

IT IS FURTHER ORDERED that Defendants have 14 days from the date of this order to search for any remaining electronic and hard copy locator cards that have not already been

---

[3] By contrast, had the parties worked cooperatively, Sergeant Albright's deposition could have been completed by April 2, 2019.

1  produced to Plaintiffs, produce any such locator cards to Plaintiffs, and file a status report with

2  the court stating which additional locator cards were located and produced, if any.

3      IT IS FURTHER ORDERED that Defendants must produce Sergeant Albright for the

4  remainder of her 30(b)(6) deposition within 30 days.  The parties must meet and confer regarding

5  a mutually convenient date for the deposition.

6      IT IS FURTHER ORDERED that Plaintiffs' request that Defendants designate additional

7  30(b)(6) designees and produce them for deposition is DENIED.

8      IT IS FURTHER ORDERED that Plaintiffs' request for an adverse inference instruction

9  is DENIED without prejudice.

10      IT IS FURTHER ORDERED that Plaintiffs' request for fees and expenses incurred in

11  bringing this motion is DENIED.

12

13      DATED: August 15, 2019

14

15      BRENDA WEKSLER
        UNITED STATES MAGISTRATE JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28