# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

Patricia Fitzpatrick, et. al,

      Plaintiffs

v.

Las Vegas Metropolitan Police Department, et al.,

      Defendants

Case No.: 2:17-cv-01886-JAD-BNW

**Order Granting Defendant Naphcare's Motion to Dismiss, Denying Naphcare's Motion for Summary Judgment as Moot, and Granting Plaintiff Fitzpatrick's Motion for Certification of Frivolous Appeal**

[ECF Nos. 137, 138, 151]

      This is the third round of dismissal briefing in this civil-rights action that seeks to redress the death of Jeremiah Bowling, who was killed by his cellmate at the Clark County Detention Center (CCDC). Patricia Fitzpatrick and Robert L. Ansara sue as special co-administrators of Bowling's estate, and Fitzpatrick also sues in her capacity as his mother. I last granted Fitzpatrick leave to amend her complaint to cure deficiencies in her federal and state law claims against, Naphcare Inc., the detention center's contracted medical provider.[1] Naphcare argues that her amended claims[2] are still deficient and moves to dismiss them with prejudice.[3] Alternatively, it asks for summary judgment because Fitzpatrick can't submit evidence to support her claims now that discovery is closed.[4] Because Fitzpatrick failed to plead sufficient facts to allege that Naphcare had a duty to communicate certain medical information to the Las Vegas Metropolitan Police Department (LVMPD) jail staff about Bowling's medical treatment and that its failure to convey that information was the driving force behind Bowling's death, I

---

[1] ECF No. 126 (order).

[2] ECF No. 131 (fifth-amended complaint).

[3] ECF No. 138 (motion to dismiss).

[4] ECF No. 137 (motion for summary judgment).

grant Naphcare's motion to dismiss the claims against it with prejudice, and I deny Naphcare's motion for summary judgment as moot.

Separately, Fitzpatrick asks me to certify that the appeal of my order denying qualified immunity to one of the correction-officer defendants is frivolous, and she asks that I order the case to proceed to trial.  Because my denial of qualified immunity to that officer was based on existing, material questions of fact—whether he had notice that the attack on Bowling was taking place or had ceased—Ninth Circuit caselaw instructs that the appeal is frivolous.  So I grant the motion, certify the appeal as frivolous, and order the parties to proceed to trial.

**Background**

The parties are familiar with the facts in this case, and I've set them out in detail in my last omnibus dispositive order,[5] so I repeat them only to the extent they are necessary for resolving the claims against Naphcare:

Jeremiah Bowling pleaded guilty to grand larceny auto and was detained at CCDC awaiting sentencing when he was killed by his cellmate, Franklin Sharp.[6]  Sharp had a violent criminal history and had attempted to kill his last cellmate a mere month before he was celled with Bowling.  Bowling didn't have a similar history; he was a non-violent offender.  Fitzpatrick alleges that "on multiple occasions [Bowling] failed and/or refused to take medications prescribed to him and/or refused to attend medical consultation, and/or treatment session(s) for which he had been scheduled."[7]  She further alleges that Naphcare had this information but

---

[5] *See* ECF No. 126 for a full summary of the facts.

[6] ECF No. 131 at 5.

[7] *Id.*

2

failed to disclose it to CCDC staff and that such disclosure might have prevented Bowling's death.[8]

## Discussion

## I.    Naphcare's motion to dismiss [ECF No. 138]

### A.    Motion-to-dismiss standard

District courts employ a two-step approach when evaluating a complaint's sufficiency on a Rule 12(b)(6) motion to dismiss.  The court must first accept as true all well-pled factual allegations in the complaint, recognizing that legal conclusions are not entitled to the assumption of truth.[9]  Mere recitals of a claim's elements, supported by only conclusory statements, are insufficient.[10]  The court must then consider whether the well-pled factual allegations state a plausible claim for relief.[11]  A claim is facially plausible when the complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct.[12]  A complaint that does not permit the court to infer more than the mere possibility of misconduct has "alleged—but not shown—that the pleader is entitled to relief," and it must be dismissed.[13]

### 1.    *Fitzpatrick's federal claims*

Fitzpatrick's first claim alleges that Bowling's Fourteenth and/or Eighth Amendment rights were violated and appears to be based on a municipal-liability theory because she does not

---

[8] *See, e.g.*, *id*. at 28–29.

[9] *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

[10] *Id.*

[11] *Id.* at 679.

[12] *Id.*

[13] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

name an individual actor. I dismiss her Fourteenth Amendment claim summarily because, as I explained in a previous order, Bowling shed his pretrial-detainee status when he pleaded guilty and his constitutional claim thus arises under the Eighth Amendment.[14] So I focus only on Fitzpatrick's Eighth Amendment, municipal-liability claim.

Fitzpatrick alleges that Naphcare's "deficienc[ies]" in conveying or failing to convey information about Bowling's and others' medical treatment, condition, and compliance with their medical treatment exposed inmates to an "unacceptable risk of violent assault" because LVMPD would have used this information to guide its cell-assignment decisions and prevent the inmates' deaths.[15] Fitzpatrick further alleges that it was Naphcare's "policy, practice, or custom" to fail to convey this information to LVMPD and, in this manner, Naphcare was deliberately indifferent to Bowling's health and safety.[16] She describes two occasions on which an inmate was killed by his cellmate at the jail—one included Sharp and occurred a month before he killed Bowling— and adds that they "occurred as a result of the flawed design, policies, procedures, practices, customs and/or usage of LVMPD."[17] These deaths occurred as a result of LVMPD's "deliberate decision[s]" in classifying inmates and housing violent offenders with nonviolent ones, she alleges.[18]

Because an entity like Naphcare may not be held liable under § 1983 on a respondeat superior theory for the acts of its employees, I granted Fitzpatrick leave to plead true facts that would support a "deliberate policy, custom, or practice" claim as the United States Supreme

---

[14] ECF No. 126 at 25 (citing *Boykin v. Alabama*, 395 U.S. 238, 242 (1969) ("[A] plea of guilty is more than an admission of conduct; it is a conviction")).

[15] ECF No. 131 at 15.

[16] *Id*. at 16, 18, 20.

[17] *Id.* at 21.

[18] *Id*. at 22.

Court recognized in *Monell v. Department of Social Services*. [19]  To plead a plausible *Monell* claim, Fitzpatrick had to plead facts to show that the alleged policy "was the 'moving force' behind the constitutional violation" that Bowling suffered. [20]

Though Fitzpatrick amended her claim to add the proper sound bites, the minor tweaks in language still fall short of stating a plausible *Monell* claim.  As before, Fitzpatrick concedes that it was LVMPD who made the classification and housing decisions.  She also offers no facts from which I can infer that Naphcare knew that Sharp presented an immediate risk of harm to Bowling and that it deliberately kept this information from LVMPD—or that LVMPD asked for it.  So she has not alleged sufficient facts to plausibly show that Naphcare's failure to convey Bowling's medical information to LVMPD was the "moving force" [21] behind his death. [22] Strangely missing from this latest complaint are facts showing that Naphcare evaluated Bowling at all.  And even with the two other deaths, the policy alleged is not "so 'persistent and widespread' that it constitutes a permanent and well[-]settled" policy or custom as contemplated for *Monell* liability. [23]

---

[19] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978); *Fuller v. City of Oakland*, 47 F.3d 1522, 1534 (9th Cir. 1995); *Tsao v. Desert Palace*, 698 F.3d 1128, 1139 (9th Cir. 2012) (extending *Monell* liability to private entities acting under color of law).

[20] *Galen v. Cnty. of L.A.*, 477 F.3d 652, 667 (9th Cir. 2007) (citing *Monell*, 436 U.S. at 694–95; *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)).

[21] *Monell*, 436 U.S. at 694.

[22] Naphcare argues that the Health Insurance Portability and Accountability Act (HIPAA) precluded it from sharing this information.  *See* ECF No. 138 at 11–12 ("It is axiomatic that an Eighth Amendment Constitutional violation claim cannot be predicated [on] the alleged failure to perform an act, i.e., convey confidential patient information to another, that is contrary to the well established federal HIPAA privacy law.").  But this argument is too undeveloped for me to rule on, so I instead focus on Naphcare's argument that Fitzpatrick's *Monell* claim is deficient under Rule 12(b)(6).

[23] *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir.1996) (quoting *Monell*, 436 U.S. at 691).

The rest of this claim concerns the same allegations about a 1998 investigation of CCDC by the United States Department of Justice that found, among other things, that LVMPD's classification policies had resulted in inmate deaths.  Fitzpatrick leans on these findings to show a policy or practice of deliberate indifference but fails to implicate Naphcare or show how the more-than-twenty-year-old investigation is relevant today.  Accordingly, Fitzpatrick's § 1983 claim based on an Eighth Amendment *Monell* claim is dismissed.

"Although there is a general rule that parties are allowed to amend their pleadings, it does not extend to cases in which any amendment would be an exercise in futility, or where the amended complaint would also be subject to dismissal."[24]  I explained the deficiencies in Fitzpatrick's claims in my last order, and her fifth amended complaint failed to cure them.  Aside from a few key language additions, her allegations haven't changed, and she did not plead any new facts to support her Eighth Amendment *Monell* claim.  I conclude that the reason Fitzpatrick failed to state such facts is that she cannot do so and any further amendment in this case would be futile.  So I dismiss this claim with prejudice.

### 2.   Fitzpatrick's negligence and wrongful-death claims

Fitzpatrick's original negligence-based claims alleged that Naphcare *failed to make appropriate housing recommendations* for Bowling's classification based on his participation, or lack thereof, in medical treatment.[25]  Her amended ones now allege that Naphcare *failed to convey information* about his participation in medical treatment.[26]  The old pleading was too thin for me to determine whether it was grounded in medical negligence and therefore void ab initio

---

[24] *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998) (internal citations omitted).

[25] ECF No. 126 at 16 (citing ECF No. 72 at 29–30).

[26] ECF No. 131 at 3–4, 15–16.

6

for failing to attach the medical-expert affidavit required by NRS § 41A.071, so I dismissed it under the *Twombly-Iqbal* pleading standard, instead.[27]  Naphcare argues that the new claim still sounds in medical negligence and is therefore void, regardless of how Fitzpatrick labeled it and notwithstanding her insistence that it's not a medical-negligence claim: "Plaintiffs aver that the actual medical services rendered by [Naphcare to Bowling] met or exceeded every applicable standard of care."[28]  Naphcare further argues that it legally could not have provided that information to CCDC because doing so would have violated Bowling's privacy rights under the Health Insurance Portability and Accountability Act (HIPAA).[29]  Fitzpatrick maintains that her claim is based only on ordinary negligence and that it's not clear whether HIPAA applies or precludes Naphcare from relaying that information.[30]

As in my last order, I cannot now ascertain whether the claim sounds in medical or ordinary negligence and I dismiss it for failing to comply with the *Twombly-Iqbal* standard. Fitzpatrick's complaint merely assumes that Naphcare had a duty to convey information about an inmate's participation or lack thereof in medical treatment or programs.[31]  But she fails to plead true facts or identify in her briefing legal authority explaining where that duty arises from. Naphcare argues that HIPAA precluded it from divulging the information, and Fitzpatrick contends that either HIPAA was not implicated or it may have allowed the transmission.  The parties' HIPAA arguments miss the mark; the regulation that the parties rely on merely states that a covered entity—assuming Naphcare is one—"*may disclose* to a correctional institution or

---

[27] ECF No. 126 at 17.

[28] ECF No. 131 at 14.

[29] ECF No. 138 at 13.

[30] ECF No. 144 at 6–13.

[31] ECF No. 131 at 31.

1  a law enforcement official . . . protected health information about such inmate" if that

2  information is necessary for "[t]he health and safety of such individual or other inmates," among

3  other reasons.[32]  That an entity like Naphcare *may* disclose such information does not establish a

4  duty to do so.  Still, if Fitzpatrick intended to plead a HIPPA-based duty to disclose, that makes

5  hers a claim for medical negligence because the disclosure would be based on medical judgment,

6  i.e., whether LVMPD needed this information to keep Bowling or other inmates safe.  And it

7  fails because she must—but has not—adhered to NRS § 41A.071's additional pleading

8  requirements.

9         Nor can the plaintiffs rely on NRS § 629.068 to impose a duty to communicate.  That

10 statute provides that "[a] custodian of health care records"—assuming Naphcare meets that

11 definition—must "provide the Department of Corrections with a complete copy of [a state

12 prisoner's] health care records" upon the Director's request.[33]  But Fitzpatrick does not plead

13 facts to show that the Director of the Department of Corrections—or anyone at CCDC for that

14 matter—requested that information.  Because Fitzpatrick has not shown that Naphcare had a

15 legal duty to communicate an inmate's medical information to CCDC and I have found none, I

16 grant Naphcare's motion to dismiss these claims.  And because Fitzpatrick has had several

17 attempts to cure her deficient pleading in this regard, I do not find that another opportunity

18 would be fruitful.  So I dismiss her negligence claims against Naphcare with prejudice.

19

20

21

22

23  [32] 45 C.F.R. § 164.512(k)(5) (emphasis added).

[33] Nev. Rev. Stat. § 629.068(1).

**II.     Naphcare's motion for summary judgment [ECF No. 137]**

Naphcare moved for dismissal of all of the claims against it and, alternatively, for summary judgment.  Because I dismiss the claims based on Fitzpatrick's failure to state a claim under Rule 12(b)(6), I deny the motion for summary judgment as moot.

**III.    The defendants' appeal is frivolous because my order denying Officer Streimer qualified immunity based on genuine issues of fact is not a final, appealable order.**

The defendants appealed to the Ninth Circuit Court of Appeals my order granting the defendants summary judgment on Fitzpatrick's claims against Officers Angelo Larry, Rolando Trevino, and LVMPD; dismissing without prejudice the claims against Naphcare; and denying summary judgment on the claims against Officer Streimer.[34]  I found that Officer Streimer was not entitled to qualified or discretionary immunity because "genuine issues of material fact [exist] about whether Officer Streimer heard Sharp attack Bowling minutes before his last visual check and whether he conducted a proper visual check."[35]  Fitzpatrick now asks me to certify that the defendants' appeal is frivolous so that the case can proceed to trial despite the pendency of that appeal.[36]

When a party files a notice of appeal, "it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal."[37] This is the "divestiture rule."[38]  An exception to the divestiture rule exists, however, to alleviate

---

[34] ECF No. 126.

[35] *Id.* at 3.

[36] ECF No. 151.

[37] *Rodriguez v. County of L.A.*, 891 F.3d 776, 790 (9th Cir. 2018) (quoting *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982)).

[38] *Id.*

9

concerns "that the appeals process might be abused to run up an adversary's costs or to delay trial[.]"[39]  In certain cases, district courts may proceed to trial, notwithstanding the appeal notice, if they certify that the "appeal is frivolous or waived."[40]

In the context of an interlocutory appeal of a district court's denial of qualified immunity, the circuit court's ability to hear the appeal turns on the basis for the denial.[41]  When the denial is based on a question of law—like whether a constitutional right was clearly established—the circuit court may exercise jurisdiction over the interlocutory appeal, assuming all facts favor the plaintiff in answering the isolated question.[42]  But when the district court's qualified-immunity denial is based on disputed issues of material fact, the defendant may not appeal that determination because there is no final decision and it is the district court's province to isolate and ascertain the factual disputes.[43]  For this reason, district courts must "articulate the basis upon which they deny qualified immunity and, when it is for reasons of sufficiency of the evidence to raise genuine issues of fact, to spell out the triable issues and why they preclude

---

[39] *Id*. at 791.

[40] *Id*.

[41] *Maropulos v. County of L.A.*, 560 F.3d 974, 975 (9th Cir. 2009).

[42] *Behrens v. Pelletier*, 516 U.S. 299, 313 (1996) ("*Johnson* [*v. Jones*, 515 U.S. 304, 317 (1995),] reaffirmed that summary judgment determinations are appealable when they resolve a dispute concerning an abstract issue of law relating to qualified immunity, typically, the issue whether the federal right allegedly infringed was clearly established.") (internal quotation, citation, and alteration omitted).

[43] *Id*. at 312–13 ("[I]f what is at issue in the sufficiency determination is nothing more than whether the evidence could support a finding that particular conduct occurred, the question decided is not truly "separable" from the plaintiff's claim, and hence there is no final decision . . . .") (internal quotation omitted); *Maropulos*, 560 F.3d at 975 ("District courts are much better situated than we are to sift through submissions of fact in order to identify those that are genuinely disputed and material, or alternatively, to isolate those that are not controverted or can be assumed as true for the purpose of deciding sufficiency to show a violation of a clearly established right.").

1   immunity before trial."[44]  If the divestiture exception applies, the district court may retain

2   jurisdiction, deem the appeal frivolous, and proceed to trial.[45]

3         The defendants argue that their appeal is not frivolous because I misapplied the Eighth

4   Amendment's deliberate-indifference standard when I held that Officer Streimer wasn't entitled

5   to qualified immunity.[46]  They reason that Officer Streimer's deficient visual security checks

6   can't support a deliberate-indifference claim because (1) his noncompliance with the cell-check

7   prison policy doesn't amount to more than negligence, (2) Bowling had already been attacked

8   when Streimer did his last inspection, and (3) the activity in the unit—the inmate workers'

9   movements and noise—is insufficient to impart on Streimer subjective knowledge of the attack

10  that was occurring in Bowling's cell.[47]  This opposition underscores the disputed issues of fact

11  that kept me from finding that Streimer is entitled to qualified immunity.

12        I explained at length why Officer Streimer's conduct during and after the attacks[48] didn't

13  "trigger qualified immunity so clearly."[49]  The Eighth Amendment requires a plaintiff to prove

14  that the officer was subjectively aware of a risk, but an officer may be liable "'if the evidence

15  showed that he merely refused to verify underlying facts that he strongly suspected to be true, or

16  declined to confirm inferences of risk that he strongly suspected to exist.'"[50]  This isn't a case in

17

18  [44] *Maropulos*, 560 F.3d at 976.

    [45] *Id*.

19  [46] ECF No. 152 at 6–8.

20  [47] *Id*. at 7.

21  [48] ECF No. 126 at 32–33 ("Officer Streimer is therefore entitled to qualified immunity on
    Fitzpatrick's theory that his failure to review the locator cards constitutes deliberate

22  indifference.").

    [49] *Id*. at 33.

23  [50] *Estate of Ford v. Ramirez-Palmer*, 301 F.3d 1043, 1052 (9th Cir. 2002) (quoting *Farmer v.
    Brennan*, 511 U.S. 825, 843 n.8, 847 n.9 (1994)).

which the prison guard merely failed to check celling information or follow the cell-check

policy.  There is substantial evidence that facts existed during and after the attack that may have

put Officer Streimer on notice of the risk and required him to intervene.  Streimer's sworn

statement that he didn't know about the attack is controverted by inmate reports that, after

Streimer announced a ten-minute lockdown warning, the audible thrashing in the cell continued.

Inmates reported that it was so loud, "almost like a bowling ball hittin' the ground," and "you

could feel it through the whole floor pretty much."[51]  This noise, coupled with the physical

movement about the unit—multiple inmates approaching the cell window and mopping up the

blood that was seeping out from under the cell door—Streimer's half peek into the cell moments

after the attack, and the questions surrounding Bowling's consciousness 30 minutes later[52]

prevented me from finding that Officer Streimer gets the benefit of qualified immunity.  Because

these are genuine issues of fact about whether Streimer "knew of a substantial risk from the very

fact that the risk was obvious"[53] based on evidence about the noise and activity in the unit, the

appeal is frivolous.  I certify it as such and order the case to proceed to trial.

## Conclusion

IT IS HEREBY ORDERED that defendant Naphcare's Motion to Dismiss **[ECF No.
138] is GRANTED**.  The claims against Naphcare are dismissed with prejudice.  The Clerk of
Court is directed to TERMINATE Naphcare as a defendant in this case.

IT IS FURTHER ORDERED that Naphcare's Motion for Summary Judgment **[ECF No.
137] is DENIED as moot**.

---

[51] ECF No. 126 at 33–36.

[52] *Id*.

[53] *Farmer*, 511 U.S. at 842.

IT IS FURTHER ORDERED that plaintiff Fitzpatrick's Motion for Certification of Frivolous Appeal **[ECF No. 151] is GRANTED.**  The defendants' appeal is certified as frivolous, and the parties are instructed to participate in the mandatory settlement conference that I previously ordered.  This case proceeds to trial on the claims against Officer Streimer for wrongful death and deliberate indifference under the Eighth Amendment, as explained in ECF No. 126.  **This case is—again—referred to the magistrate judge to schedule a settlement conference.**

Dated: August 4, 2020

_____
U.S. District Judge Jennifer A. Dorsey